UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 17-45 (WOB-CJS)

LONNIE E. ELEY, on behalf
Of the General Cable Savings
And Investment Plan, himself,
And a class consisting of
Similarly situated participants
Of the Plan                                              PLAINTIFFS


VS.                 **MEMORANDUM OPINION AND ORDER**


**GENERAL CABLE CORP.,**
**ET AL.**                                               **DEFENDANTS**


This matter is before the Court on defendants' motion to dismiss (Doc. 29). The Court previously heard oral argument on this motion and took the matter under advisement. (Doc. 45).

Upon further study, the Court issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

Plaintiff Lonnie M. Eley, on behalf of a putative class of participants in the General Cable Savings and Investment Plan ("the Plan"), brings this action under §§ 404, 405, 409 and 502 of the Employee Retirement Income Security Act of 1974, as amended, for defendants' alleged breaches of fiduciary duties. (Am. Compl. ¶

1) (Docs. 20, 25).[1] Count One of the Amended Class Action Complaint alleges breach of the duty of prudence; Count Two alleges breach of the duty of loyalty; and Count Three alleges breach of the duty to monitor. (Doc. 20 ¶¶ 153-188).

Plaintiff contends that defendants permitted the Plan to continue to offer General Cable stock as an investment option even after defendants knew or should have known that the stock was artificially inflated because the company had not disclosed that employees of its foreign subsidiaries had violated the Foreign Corrupt Practices Act of 1997 ("FCPA") by paying bribes to foreign government officials. (*Id.* ¶¶ 6-7). Plaintiff alleges that the stock was thus an imprudent investment, and defendants breached their duties of prudence and loyalty in offering the stock to Plan participants. (*Id.* at 5).

From 2014 to 2016, General Cable publicly disclosed the possible FCPA violations. As a result, General Cable's stock price dropped, and Plan participants lost a significant portion of their retirement investments. (*Id.* ¶ 110-114).

In December 2016, the company entered into agreements with the Department of Justice and the Securities and Exchange Commission to pay millions of dollars to settle FCPA-related charges against it. (*Id.* ¶¶ 115-117).

---

[1] The Amended Complaint is filed under seal at Doc. 20. The redacted version is at Doc. 25.

In his Amended Complaint, plaintiff alleges that defendants should have taken steps to protect Plan participants from harm: (1) making early and candid disclosures of the company's FCPA violations (*Id.* ¶¶ 122-125); (2) freezing further purchases of company stock and holding contributions in cash "or some other short-term investment" (*Id.* ¶¶ 126-139); (3) seeking guidance from the Department of Labor or Securities and Exchange Commission (*Id.* ¶ 140); (4) resigning as Plan fiduciaries to the extent that could not act loyally and prudently (*Id.*); and (5) retaining outside experts to serve as advisors or independent fiduciaries for the Plan (*Id.*).

Defendants have moved to dismiss the Amended Complaint, arguing that it fails to state a claim under applicable law. For the reasons that follow, the Court agrees.

*Analysis*

A. **Breach of the Duty of Prudence**

ERISA requires a fiduciary to discharge his or her duties with respect to a Plan solely in in the interest of the participants and beneficiaries and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

This duty of prudence applies to employee stock ownership plans ("ESOPs") such as the General Cable plan, except that ESOPs need not be diversified. *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2467 (2014).

Plaintiff alleges that defendants breached their duty of prudence by failing to act in response to non-public, "insider" information: knowledge of the FCPA violations by General Cable. In *Dudenhoeffer*, the Supreme Court noted that such information creates a dilemma for Plan fiduciaries because acting on such information may violate securities laws, and not acting on the information may expose them to suits such as this one. 134 S. Ct. at 2472-73.

Balancing these and other considerations, the Supreme Court set forth a stringent pleading standard for breach-of-prudence claims based on non-public information:

> To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege *an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it*.

*Id.* at 2472 (emphasis added).

This standard places a "significant" burden on plaintiffs; the plaintiff must allege an alternative course of action that is "so clearly beneficial that a prudent fiduciary *could not conclude*

4

that it would be more likely to harm the fund then to help it." *Whitley v. B.P., P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2106).

Plaintiff first alleges that defendants should have made "early and candid" disclosures of the FCPA violations because "the longer the concealment continued, the more of the Plan's good money went into a bad investment." (Am. Compl. ¶ 122). However, the Sixth Circuit and other courts have expressly rejected that argument after *Dudenhoeffer*. *See Graham v. Fearon*, No. 17-3407, 2018 WL 315098, at *5 (6th Cir. Jan. 8, 2018) ("This court and all other courts considering that alternative action post-*Fifth Third* have rejected it."); *Saumer v. Cliffs Natural Res. Inc.*, 853 F.3d 855, 864 (6th Cir. 2017) (rejecting nonpublic information claim premised on allegation that plan fiduciary should have publicly disclosed negative information); *Dormani v. Target Corp.*, Case No. 17-cv-4049, at *5 (D. Minn. June 15, 2018) ("There, as here, a reasonable fiduciary could have believed that disclosing negative information about Target stock would do more harm that good (e.g., via market overcorrection)."); *Fentress v. Exxon Mobil Corp.*, 304 F. Supp.3d 569, 583 (S.D. Tex. 2018) (noting that courts have repeatedly ruled against plaintiffs who attempt to fit the theory 'that in virtually every fraud case, the truth will eventually come out and that the later the disclosure is made, the greater the harm to stock holders will be' into the prudent fiduciary standard.").

Plaintiff argues that early disclosure in this case would not have caused significant harm compared to the losses that eventually resulted because of the length of the Class Period — twelve years — and the fact that General Cable ultimately was a net purchaser due to large purchases made towards the end of the Class Period. (Am. Compl. ¶ 124; Doc. 34 at 18-22).

Again, however, the Sixth Circuit and other courts have rejected this argument because it effectively invokes hindsight to task fiduciaries with acting on information not available until years later. See *Graham*, 2018 WL 315098, at *6 ("However, recognizing ERISA imposes the duty to act in a prudent manner under the circumstances then prevailing,' courts have noted the duty . . . requires prudence, not prescience.") (internal quotations and citation omitted); *Dormani*, 2018 WL 3014126, at *5.

The Court in *Dormani* explained:

> Plaintiffs next assert that Defendants should have publicly disclosed negative information about Target stock in order to help correct its artificial inflation. . . . The prior order also found that Plaintiffs' disclosure theory rest[s] on hindsight: it presupposed that a reasonable fiduciary would know that the Fund would be a net purchaser of Target stock during the Class Period (i.e., would have known that it would have spent more than it made on the stock), such that a corrective disclosure would not do more harm than good. . . But a fiduciary could not know this based on contemporaneous information, and as a result, it would have been reasonable to conclude that disclosures would tip the scales towards harm.

*Dormani*, 2018 WL 30134126, at *5.

Therefore, plaintiff fails to plead a plausible claim based on the disclosure theory.[2]

Plaintiff's allegation that defendants should have held participants' contributions in cash or some other short-term investment or should have simply frozen further purchases meets with the same fate. *See Graham*, 2018 WL 315098, at *6-*7 (rejecting assertion that fiduciaries should have halted investments in company stock or directed contributions to a low-cost hedging product as insufficient under *Dudenhoeffer* pleading standard); *Saumer*, 853 F.3d at 864-65 (reasonable fiduciary could conclude that freezing purchases of company stock could cause more harm than good because it "signals that something may be deeply wrong inside a company but doesn't provide the market with information to gauge the stock's true value"); *Dormani*, 2018 WL 3014126, at *5 (rejecting freeze argument because "freezing purchase could easily do more harm than good by sending a negative signal to the market, causing a drop in Target's stock value"); *Jander v. Retirement Plans Comm. of IBM*, 272 F. Supp.3d 444, 452-53 (S.D.N.Y 2017) (rejecting claims based on freeze and hedging product theories).

---

[2] The Court notes that the case cited by plaintiff in support of this argument, *Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 596 n. 3 (6th Cir. 2012), was abrogated by *Dudenhoeffer*.

7

Indeed, plaintiff alleges only that "it is extremely unlikely" that a freeze would have had "an appreciable adverse impact on the price of General Cable stock." (Am. Compl. ¶ 134). Of course, that is not the test under *Dudenhoeffer*. Rather, plaintiff must "plausibly allege that *no* prudent fiduciary could have concluded that the proposed alternative action would do more harm than good." *Whitley v. B.P., P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2106).

As to the "cash buffer" alternative, the Court in *Dormani* noted that a reasonable fiduciary could easily conclude that such action would cause more harm than good because it would create an "investment drag," *i.e.*, "the prospect that cash stored in a buffer will return less than if it were invested in stock." *Dormani*, 2018 WL 3014126, at *5.

Finally, plaintiff alleges that defendants should have resigned, sought guidance from regulatory authorities, or retained experts to advise them. These allegations are wholly conclusory and also do not satisfy *Dudenhoeffer*. *See In re: Target Corp. Sec. Litig.*, 275 F.Supp.3d 1063, 1089 (D. Minn. 2017) ("Seeking the DOL and SEC's guidance is really no different from disclosure because doing so would still require public disclosure;" and "resigning would only shift responsibility to other fiduciaries"); *In re: IDEARC ERISA Litig.*, Civil Action No. 3:09-CV-2354-N, 2016 WL 7189981, at *6 (N.D. Tex. Oct. 4, 2016) ("The Third Amended

8

Complaint still does not show how the advice of a third party, with access to the same public information, would have changed the Defendants' actions.").

In sum, plaintiff has not plausibly alleged any alternative action the defendants could have taken that would have been consistent with the securities laws and that a similarly situated prudent fiduciary would not have viewed as more likely to harm than help the Plan. Plaintiff thus has failed to plead a claim for breach of the duty of prudence.

**B. Breach of the Duty of Loyalty**

Count Two of the Amended Complaint alleges that defendants breached their duty of loyalty to Plan participants by continuing to allow investment in General Cable stock; failing to engage independent fiduciaries to make judgments about investing Plan assets; placing their interests above the interest of participants; misrepresenting information; satisfying General Cable's matching obligations with company stock; and breaching their co-fiduciary obligations. (Am. Compl. ¶¶ 164-176).

These allegations largely mirror those underlying plaintiff's breach of prudence claim, and to that extent they are derivative and fail for the same reasons. *In re: Target Sec. Litig.*, 275 F. Supp.3d at 1090. *See also Saumer v. Cliffs Natural Res.*, Case No. 1:15-cv-954, 2016 WL 8668509, at *6 (N.D. Ohio April 1, 2016) ("However, as previously discussed, Plaintiffs fail to properly

9

allege that the investment of Plan assets in Cliff's stock was imprudent under ERISA. Because Count I is not adequately pled, it cannot form a basis for Plaintiffs' Count II loyalty claim."), *aff'd*, *Saumer v. Cliffs Natural Res.*, 853 F.3d 855 (6th Cir. 2017)).

The wholly conclusory allegations that defendants placed their interest ahead of participants also do not pass muster under Rule 12(b)(6). *See In re: Target Sec. Litig.*, 275 F. Supp.3d at 1091.

Next, the single paragraph devoted to alleged misrepresentations is also conclusory and "does not plead one single misleading or inaccurate statement made by Defendants." *Id.* at 1092. *See also Saumer*, 2016 WL 8668509, at *7 ("cursory allegations of misrepresentations" in calls with analysts, SEC filings, and other documents do not plead plausible breach of loyalty claim).

The Court notes that plaintiff's memorandum in opposition does not address any of these propositions, but instead is limited to a single paragraph concerning alleged matching obligations. (Doc. 34 at 34). As to that point, plaintiff cites no authority for the proposition that use of stock that is not an imprudent investment as matching contributions would form the basis for a breach of loyalty claim. And the single paragraph in the Amended Complaint on this issue contains no alleged facts to support the

allegation that General Cable, in fact, ever used company stock to satisfy its matching obligations.  (Am. Compl. ¶ 173).

**C. Breach of the Duty to Monitor**

Finally, plaintiff concedes that its duty to monitor claim is derivative of its first two claims.  *See In re: Target Sec. Litig.*, 275 F. Supp.3d at 1093 (noting that plaintiffs cannot maintain a claim for breach of the duty of monitoring absent an underlying breach of other ERISA duties).  This claim thus also fails as the pleading stage.

Therefore, having reviewed this matter, and the Court being sufficiently advised,

**IT IS ORDERED** that defendants' motion to dismiss (Doc. 29) be, and is hereby, **GRANTED**.  Plaintiff's Amended Complaint is hereby **DISMISSED**, and this matter is **STRICKEN FROM THE DOCKET OF THIS COURT**.

This 23rd day of July, 2018.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge